IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>   vs.<br><br>SEDRIC O'NEAL WILLIAMS,<br><br>                  Defendant. | Case No. 4:99-cr-00002-JKS<br><br>O R D E R |

      Sedric O'Neal Williams was convicted of theft of a firearm, a class C felony, in violation of 18 U.S.C. § 924(1). He was sentenced to a term of imprisonment, to be followed by a period of supervised release. The judgment is dated February 17, 2002. Docket No. 129. Williams completed his prison term and began serving supervised release on October 7, 2005. On December 15, 2005, Williams's probation officer filed a petition to revoke supervised release. Docket No. 137. The probation officer indicated that Williams began using marijuana within a week of his release from prison and had frequently used marijuana thereafter. Williams eventually admitted the violations of supervised release. The United States Attorney argued that Williams was incorrigible and should be sentenced to the maximum time available. Williams argued that he was drug dependent, that he wished to overcome his dependency, and that he should be placed in the inpatient Clitheroe Center drug program in hopes of overcoming his drug dependancy. The probation officer concurred in this recommendation. The Court accepted Williams's request, revoked and reinstated supervised release for a term of thirty months, and added a condition of supervised release directing Williams to participate in a 90-day inpatient drug treatment program.

Docket No. 149. It was understood that the drug treatment program would be the Clitheroe Center program requested by Williams. The amended judgment is dated March 10, 2006.

On March 17, 2006, the probation officer filed a second petition to revoke supervised release, contending that Williams had entered the Clitheroe program on March 10, 2006, and been discharged for non-cooperation on March 15, 2006. Docket No. 151. On April 24, 2006, while the second petition was pending, the probation officer filed a third petition to revoke supervised release. Docket No. 154. In this petition Williams was charged with obtaining a false instructional permit from the Alaska Department of Motor Vehicles by impersonating Cedric Deshaun Summerville and signing Summerville's name to the application. In addition, Williams was charged with obtaining a false driver's license in the name of Cedric Deshaun Summerville and signing Summerville's name. Finally, Williams was charged with associating with a known felon. Between the two petitions, Williams was charged with six violations of his supervised release.

Since Williams had been detained, a probable cause hearing was held before United States Magistrate Judge John D. Roberts on April 25, 2006. Judge Roberts found probable cause to believe that Williams had committed five of the six charged violations. Judge Roberts found insufficient evidence that Williams had associated with a known felon. The five remaining violations were referred to this Court for an adjudication hearing. The Court heard evidence May 8–9, 2006, argument on May 10, 2006, and is now prepared to announce its decision.

Where it is claimed that a felon has violated the conditions of his supervised release he is entitled to due process; that is, notice and an opportunity to defend.[1] The courts have established a series of hearings in order to assure that due process is provided. Where the felon is detained, case law requires that three hearings be held before supervised release may be revoked and a sanction

---

[1] The United States Supreme Court set out certain minimal due process requirements for parole revocation. *See Morrissey v. Brewer*, 408 U.S. 471 (1972). Later, it extended those safeguards to probation revocations. *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973). Finding a substantial similarity between parole and probation revocations and the revocation of supervised release, the ninth circuit extended those protections to supervised release. *See United States v. Martin*, 984 F.2d 308, 310 (9th Cir. 1993). Those protections are now addressed in Fed. R. Crim. P. 32.1.

ORDER

imposed: probable cause, adjudication, and disposition. The first hearing is in the nature of a bail or detention hearing. It must be held immediately after the felon's arrest.[2] The focus is on whether there is probable cause to detain the felon. Once probable cause is determined to exist, the felon may be detained. Nevertheless, before supervised release may be revoked an adjudication hearing must be held. The felon is entitled to notice and an opportunity to defend. He must be told the specific violations of supervised release that are charged so that he can prepare a defense. *United States v. Havier*, 155 F.3d 1090 (9th Cir. 1998). Where it is alleged that the felon committed new law violations he is entitled to know the specific statutes he allegedly violated. *Id*. The burden is upon the prosecution to prove violations by a preponderance of the evidence. The court must make specific findings of fact and set out its conclusions of law. *See United States v. Sesma-Hernandez*, 253 F.3d 403 (9th Cir. 2001). Oral findings, if sufficiently specific, will suffice. *United States v. Daniel,* 209 F.3d 1091 (9th Cir. 2000). If the court finds insufficient evidence as to one or more charges they will be dismissed. If the court finds that the government has proved one or more charges the case proceeds to disposition hearing. Proof of one violation may suffice to revoke. *See e.g., Daniel*, 209 F.3d at 1094. But, proven charges do not automatically require revocation of supervised release. *United States v. Diaz-Burgos*, 601 F.2d 983, 985-86 (9th Cir. 1979). Nor do sufficient grounds to revoke supervised release automatically justify returning the felon to prison. The felon must be given an opportunity to present mitigating evidence and argue for dispositions short of re-imprisonment.

In this case there are five charges which will be separately addressed, but not necessarily in the order in which they were brought. First, the Court will address the charge that Williams violated the prohibition on possession of prohibited drugs by residing in a house where marijuana and marijuana paraphernalia were found and a strong odor of marijuana suggested recent use. The Court finds beyond reasonable doubt that Williams was knowingly present in a house where

---

[2] No hearing is necessary if the felon is being detained in connection with a new offense separate from the supervised release revocation. *See e.g., United States v. Diaz-Burgos*, 601 F.2d 983 (9th Cir. 1979) (no probable cause hearing necessary where defendant is being detained for another offense).

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CR\D.AK 1999\F99-0002.005.wpd

marijuana was being used and where marijuana and marijuana paraphernalia could be found; however, the Court is not convinced that the Government proved it more likely than not that Williams resided there.  More significant, the Court is not convinced that the Government proved that Williams possessed the marijuana or marijuana paraphernalia found at the location.  *See United States v. Smith*, 962 F.2d 923 (9th Cir. 1992) (discussing evidence of actual and constructive possession of narcotics).  It is not sufficient to show knowing presence where narcotics are found to establish either actual or constructive possession of drugs.  *United States v. Vasquez-Chan*, 978 F.2d 546, 550 (9th Cir. 1992).  There must be some further evidence to permit an inference that the defendant exercised dominion and control over the narcotics or evidence that the defendant had the authority to dispose of the drugs either personally or through an agent or other member of a joint venture.  *United States v. Bridgeforth*, 189 F.3d 475 (9th Cir. 1999).  The Court will therefore dismiss Violations 2 and 3.

Next, the Court will address the charges that Williams committed forgery by obtaining a false instructional permit and later a false driver's license from the Alaska Department of Motor Vehicles under the name of Cedric Deshaun Summerville and signed Summerville's name to each document.  *See* Alaska Statute 11.46.505 (forgery in the second degree a class C felony), AS 11.46. 510 (forgery in the third degree a class A misdemeanor), and AS 11.46.580 (definitions).  *Cf., State v. Brooks*, 271 N.E. 2d 869 (Ohio 1971) (upholding forgery conviction on similar facts).  The Court has carefully reviewed the testimony of Officer Kevin Mitchell and Ms. Oreol Jaquette and evaluated their credibility in light of their demeanor.  The Court finds Officer Mitchell credible, and finds that Ms. Jaquette is not credible.  Under the totality of the evidence, the Court is convinced that Williams was driving a vehicle in which Ms. Jaquette was a passenger, in which marijuana was used, and that when stopped by Officer Mitchell and asked for identification, Williams falsely identified himself as Cedric Deshawn Summerville.  In support of this false identification, Williams tendered a false learner's permit bearing the name and identifying characteristics of Summerville but featuring Williams's picture.  Williams intended to "defraud" Officer Mitchell within the meaning of *Morrison v. State*, 469 P.2d 125 (Alaska 1970).  By misrepresenting his true identity, Williams concealed the fact that he was a convicted felon and thereby gained an advantage over

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CR\D.AK\1999\F99-0002.005.wpd

Officer Mitchell.  Finally, a learner's permit and a driver's license are documents that evidence or create a legal right, *i.e.*, the right to drive a vehicle on the public highways.  While it is less clear, in the absence of expert handwriting evidence, that Williams actually signed Summerville's name, the Court is satisfied that Williams knowingly obtained, possessed, and used forged driving documents.  The fact that the Petition at Docket No. 154 incorrectly identifies AS 11.46.510 (a class A misdemeanor) as a class C felony (correctly, AS 11.46.505) is inconsequential.[3]  Essentially, the felony requires commission of the misdemeanor plus an additional element.  The misdemeanor is a lesser included offense of the felony.  The important thing is that Williams was notified that he was charged with "obtaining" forged driving documents, which he definitely did, and his possession of those documents violated AS 11.46.510(a)(2).  Since the forged documents affected his legal right to drive he also committed the felony.  *See* AS 11.46.505(a)(1).  The Court therefore sustains Violations 4 and 5.  Violation 6 was dismissed by Judge Roberts and need not be addressed further.

   Finally, the Court will address Violation 1 alleging that Williams violated the condition to "participate" in an inpatient substance abuse treatment program for up to 90 days.  The petition notes that Williams was administratively discharged from the Clitheroe Center due to multiple rule infractions.  At the outset we must recognize the issue is whether Williams participated in the program.  The fact that program administrators discharged him is evidentiary, but not conclusive,

---

[3] At the hearing, Williams objected to certain evidence belatedly provided by the Government.  The Court offered Williams a continuance to prepare cross-examination or to seek additional evidence to contradict the late-provided evidence.  Williams did not request a continuance.  Nor did Williams specifically object to a variance between the violation charged and the violation proved.  Had he done so, the Court would have permitted him additional time to confront any such "variance."  It does not appear that Williams was mislead as to the charges or the evidence that would be offered in support of those charges.  That said, the Court recognizes that the charges focused on forging the document, *i.e.*, "signing the name," and not uttering a forged document.  Where a supervised release revocation is before the Court, and a variance is found between what the probation officer alleged in the written statement of violations and what the government is prepared to prove, but what the government is prepared to prove is itself a violation of law, then an amendment of the charges and a continuance is the proper remedy.  To dismiss the petition under such circumstances would be to continue a regimen of supervised release that was not providing for the defendant's rehabilitation and the protection of the community.

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CR\D.AK 1999\F99-0002.005.wpd

regarding his participation.  By the same token, the focus is on Williams's good faith and whether he made reasonable efforts to participate in the program.  Ultimately, the question is Williams's state of mind during his stay at Clitheroe.  Since it is impossible to directly access Williams's mind, we must seek understanding through an evaluation of the totality of the circumstances, including Williams's words and actions both at Clitheroe and elsewhere during the same general time period.  In order to evaluate this charge, it is necessary to examine the circumstances under which the inpatient treatment condition was imposed.  Within days of his release from prison, Williams began using marijuana.  The Government viewed this as proof that Williams was not willing to separate himself from the drug culture and that so long as Williams was involved in that culture, no matter what the nature of his involvement, he presented an unreasonable risk of danger to the public.  The Government asked for a significant prison sentence.  Williams conceded that he had used marijuana, but argued that he was dependent and if he could address his dependency he would be able to leave the drug culture and become a productive citizen.  Williams is an intelligent man with good prospects if he leaves the drug culture; unfortunately, there is a real risk that he may perceive greater benefits from that culture itself and as a result engage in behaviors which will endanger the community.  Nevertheless, the Court accepted the proposed disposition and sent Williams to Clitheroe, with the assumption that Williams would make a good faith effort to address his self-described drug dependency.  Based upon the totality of the evidence, the Court is satisfied that Williams did not make a good faith effort to succeed at Clitheroe.  While many of the identified program violations may appear trivial in isolation, it is clear that the men and women who administer the program have a great deal of experience with drug dependent people and have learned to recognize those who do and those who do not truly seek recovery.

Although the Court is not prepared to find that Williams possessed marijuana either during his automobile ride or while in the residence where he was ultimately arrested, the Court does find that Williams continues to associate with men and women who violate federal law regarding drug use.  Whether Williams did or did not falsely sign another person's name to a learner's permit and a driver's license, he clearly intended to use those documents to conceal his identity.  Finally, Williams knew he was the driver of the vehicle stopped by officer Kevin Mitchell in which Ms.

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CR\D.AK 6999\F99-0002.005.wpd

Jacquette was a passenger.  Permitting Ms. Jacquette to testify that Williams was not in the vehicle clearly suborned perjury and gives some insight into Williams's state of mind regarding obeying the law and cooperating in supervised release.  In sum, the Court is convinced beyond any reasonable doubt that Williams did not "participate" in the Clitheroe program in good faith.  The Court is convinced that Williams has not appreciated the risk to him of continued flirtation with the drug culture and that, therefore, he remains a risk to himself and the community.

A disposition hearing will be scheduled.  At the hearing the parties may present argument and evidence directed to the factors enumerated in *United States v. Eyler*, 67 F.3d 1386 (9th Cir. 1995) (rehabilitation, deterrence, incapacitation (protection of the public), training, and treatment).

**IT IS THEREFORE ORDERED**:

**Violation 1** is **SUSTAINED**.  **Violations 2** and **3** are **NOT SUSTAINED**.  **Violations  4** and **5** are **SUSTAINED** based upon the weight of the circumstantial evidence. **Violation  6** was **dismissed** by Judge Roberts and will not be further considered.

The parties shall contact the Court's Case Manager, Mr. Dan Maus, to schedule a disposition hearing.  Two weeks before the scheduled disposition hearing, Ms. Mader, Williams's probation officer, shall prepare and distribute to the Court and to the parties a  report, which shall bring the prior pre-sentence report up to date and summarize Williams's experience within the institution or institutions to which he was classified and his experience since admission to supervised release.  The parties should meet and confer and after consultation, notify Mr. Dan Maus at least seven days before the scheduled hearing whether they will be presenting evidence and if so, how much time will be needed to complete the disposition hearing.  Mr. Maus will then make sure that sufficient time is set aside on the calendar to complete the disposition hearing.

Dated at Anchorage, Alaska, this 24th day of May 2006.

                                                 /s/ James K. Singleton, Jr.
                                            **JAMES K. SINGLETON, JR.**
                                              United States District Judge

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CR\D.AK 7\1999\F99-0002.005.wpd