# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>SEDRIC O'NEIL WILLIAMS,<br><br>        Defendant. | 4-99-cr-00002-JKS-JDR<br><br>**RECOMMENDATION<br>REGARDING<br>PETITION TO REVOKE<br>SUPERVISED RELEASE**<br><br>(Docket No. 182) |

Defendant **Sedric Williams** is before the court on a Petition to Revoke Supervised Release filed January 12, 2007. Docket No. 182. The petition alleges that on January 9, 2007 Williams submitted a urine sample that tested positive for cocaine, thus violating the standard condition of supervision that he not purchase, possess, use, distribute, or administer any controlled substance except as prescribed by a physician. An evidentiary hearing on the petition was conducted before the magistrate judge by consent on February 7, 2007. Upon due

consideration of the evidence adduced **the magistrate judge recommends that the court adopt findings of fact as set forth below and that the petition to revoke supervised release (Docket No. 182) be GRANTED.**

### Parties' Positions

Williams denies knowingly and voluntarily ingesting cocaine on or about January 9, 2007. In support of his argument of insufficient evidence he states that cocaine is addictive and notes he provided clean UA's both before and after January 2007. He adds that January 9, 2007 was not his day to be drug tested and he has never admitted to using cocaine. He claims that 283 nanograms is a low level that suggests that it is more likely that a mistake was made in the drug testing of his sample.

The government counters that there is no evidence of an involuntary use of cocaine by Williams and that based upon his history of prior drug use including confirmations from the lab the government has established that he is a drug user, meaning that a positive result for cocaine use should not be all that surprising. The government points out that in the past Williams denied using cocaine but drug testing proved otherwise.

### Findings of Fact

The record reflects that Sedric Williams was sentenced on January 14, 2002 to serve 87 months imprisonment followed by three years of

4-99-cr-00002-JKS-JDR-WILLIAMS @182 RR Re Pet Revoke SupRel.wpd

2

RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
4-99-cr-00002-JKS-JDR    Signed by Judge John D. Roberts    03/09/2007; Page 2 of 12

supervised release for the offense of theft of a firearm. Supervision began on or about October 11, 2005.[1]

A Standard Condition of Supervision provided: "The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician." A mandatory condition of supervision required that the defendant not commit another federal, state or local crime.

During supervision Williams was subjected to random urinalysis performed by the Federal Probation Office in Anchorage. The defendant was required to appear at the probation office to provide a urine specimen at the instruction of his probation officer. Williams was informed that he could call in between 5:00 p.m. and 8:00 a.m. and be informed by a recording about whether he needed to show up for drug screening the following day.

During his period of supervision Williams provided "dirty" UA's for marijuana on October 10 and October 11, 2005 and October 17, 2005. His probation officer gave him an opportunity to explain the positive UA's. In October 2005 Williams admitted to the use of marijuana. Similarly, he admitted to the use of

---

[1] According to the special report to the court (Pretrial Services Report) dated January 16, 2007, Williams was released from the custody of the Bureau of Prisons (BOP) on October 7, 2005.

4-99-cr-00002-JKS-JDR-WILLIAMS @182 RR Re Pet Revoke SupRel.wpd    3

RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
4-99-cr-00002-JKS-JDR                Signed by Judge John D. Roberts            03/09/2007; Page 3 of 12

marijuana following a positive UA for marijuana on November 16, 2005 and December 15, 2005.

On December 7, 2005, Williams tested positive for THC, cocaine and MDMA (ecstasy).  A Petition to Revoke Supervision was filed December 15, 2005 by U.S. Probation Officer Beth Mader (Exhibit A to the Evidentiary Hearing).  Count 1 alleged that the defendant had field tested positive for the use of marijuana and ecstacy; Count 2 referred to his signed admission on or about October 11, 2005 to the use of marihuana; Count 3 alleged that on October 17, 2005 Williams signed an admission form acknowledging the use of marijuana; Count 4 alleged that on December 7, 2005 Williams signed an admission form admitting to the use of marijuana and ecstasy; and Count 5 alleged that on December 15, 2005 Williams submitted to a urine test which field tested positive for marijuana and ecstacy. Adjudication of this petition resulted in a Third Amended Judgment filed on or about March 14, 2006.  The court found that Williams had committed the five violations of supervision.

Laboratory analysis for the December 7, 2005 UA sample confirmed positive for THC and cocaine.  Williams had admitted to the using of marijuana and ecstasy but not cocaine.  The lab report reflected negative with respect to the presence of MDMA.

4-99-cr-00002-JKS-JDR-WILLIAMS @182 RR Re Pet Revoke SupRel.wpd                                                                 4

RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
4-99-cr-00002-JKS-JDR            Signed by Judge John D. Roberts            03/09/2007; Page 4 of 12

Williams was released on supervision on December 15, 2006.  He tested negative for drug use on December 21, 2006, December 29, 2006, and January 5, 2007, January 11, 2007, and January 16, 2007.

When Williams reported to the U.S. Probation Office on January 9, 2007 he was advised by Joseph Peroutka, the drug technician for the probation office, that he was not scheduled to provide a UA on that date.  A daily list printed by Mr. Peroutka indicated that Williams would have been scheduled to show up for a UA on January 10, 2007.  Mr. Peroutka did not tell Williams that he did not have to provide a sample on January 9 but he did tell him that if he gave a sample then he could talk to Chris Liedike (his probation officer) about whether he needed to come in for the next time.  Williams chose to voluntarily provide a UA.  Williams said that since he was there he might as well give a sample.

At the evidentiary hearing Mr. Peroutka explained his procedure for obtaining and testing a UA sample from a supervisee.  A sterile UA specimen cup like that in Exhibit 6 is given to the defendant to use to urinate in the cup.  From this cup the technician pours a portion of it into a test cup which contains four strips each of which tests for methamphetamine, THC, opiates, or cocaine.  A single line on the test strip indicates a positive result whereas two lines indicate a negative result.  The original cup is discarded in a discard bag.  The test results appear on the strips in about five minutes.

4-99-cr-00002-JKS-JDR-WILLIAMS @182 RR Re Pet Revoke SupRel.wpd

5

4-99-cr-00002-JKS-JDR
RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
Signed by Judge John D. Roberts
03/09/2007; Page 5 of 12

Mr. Peroutka filled out a chain of custody form including his name and the defendant's signature that he watched the unwrapping of the sterile cups used for the test.  A sticker with a specimen sample number is placed on the cup and that number remains on the chain of custody document (Exhibit 1).  The specimen sample number on the test cup (Exhibit 4) was the same number on the chain of custody form.  A carbon copy of the chain of custody form remained with the sample when it was mailed to the lab.  Mr. Williams signed a statement certifying that the specimen was his and had not been adulterated.

Mr. Peroutka obtains about 15 to 20 UA samples per day.  The urine samples are provided by the supervisee in the presence of the technician on the restroom side of the lab in the probation office.  The supervisee remains there until the technician receives the test results from the test strips and the sample.

After the test results were provided to Williams on January 9, 2007 Peroutka sealed a plastic bag containing Williams' sample which was in front of him and then place it in a refrigerator. Subsequently, Mr. Peroutka placed the specimen in a package for DHL Mailing to Kroll Laboratory in Louisiana.  About a week later he received an e-mail from the lab indicating that this particular specimen had been processed and that the lab results were posted.  The probation office then received a lab report (Exhibit 2) that provided the defendant's name, date of the sample collected, the results of the test and a confirmation level.  The confirmation level for

4-99-cr-00002-JKS-JDR-WILLIAMS @182 RR Re Pet Revoke SupRel.wpd                                      6

RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
4-99-cr-00002-JKS-JDR                    Signed by Judge John D. Roberts                    03/09/2007; Page 6 of 12

cocaine is 150 nanograms. Mr. Peroutka sent an e-mail to the lab and learned that the results for testing the January 9, 2007 specimen from Williams was 283 nanograms. The report (Exhibit 3) contains the defendant's name, specimen number and date collected.

In early January 2007, US Probation Officer Chris Liedike began supervising Williams on his supervised release. He was advised on January 9, 2007 that Williams tested positive for cocaine. He discussed the positive result with Williams and Williams denied using cocaine. None of the drug testing was designed to inform the probation officer how the controlled substance got into the person's system.

Patricia Pizzo, Vice-President of operations for Kroll Lab in Gretna, Louisiana, testified as to how the sample was tested by the lab and explained the quality control sampling procedure done to assure the reliability of the analysis. She is a Forensic Toxicologist and testified as to the test results, analytical data, quality control data and chain of custody data. She is the person responsible for the lab under the substance Abuse and Mental Health Services Administration SAMSA (Federal Regulatations for Drug Screening). The laboratory analysis was performed by George Dorcy at the Kroll Lab. After the laboratory analysis of the sample was completed the sample was kept at minus twenty degrees fahrenheit until it was shipped back to Alaska on February 1, 2007.

4-99-cr-00002-JKS-JDR-WILLIAMS @182 RR Re Pet Revoke SupRel.wpd                    7

RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
4-99-cr-00002-JKS-JDR          Signed by Judge John D. Roberts          03/09/2007; Page 7 of 12

According to Ms. Pizzo, cocaine usually clears out of the body system in 24 to 48 hours although it can remain in the system up to 72 hours for a chronic user. With reference to the 283 Nanograms[2] for the subject sample she indicated that the person providing the UA could have recently used cocaine or if there were a time lapse of 24 to 48 hours it could indicate that a larger quantity of cocaine had been used. She described the 283 nanogram level as "very low" but "significantly above" "the U.S. Courts cutoff of 150.

Ms. Pizzo is not the individual who opened the DHL package at the lab when it was received from Alaska or poured the samples of it into the allocate tubes for testing or operated the GCS equipment.

Williams argues that the results of the laboratory analysis for the December 7, 2005 UA samples illustrates that mistakes by the lab can be made. He views the lack of a positive result in the laboratory analysis for ecstacy as support for his argument stating that the lab was not able to confirm his admission to the use of ecstasy. The government counters convincingly that this was not necessarily a "mistake" since the results can be explained in other ways unrelated to the handling or testing of the UA sample of December 7, 2005. The evidence at the February 7, 2007 hearing did not identify the date on which Williams (admittedly) had used ecstacy or whether the sample was taken and whether a sufficient amount of

---

[2] Nanograms per millileter of benzoylecgonine.

4-99-cr-00002-JKS-JDR-WILLIAMS @182 RR Re Pet Revoke SupRel.wpd

8

RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
4-99-cr-00002-JKS-JDR          Signed by Judge John D. Roberts          03/09/2007; Page 8 of 12

ecstacy would remain in a person's body for a period of time to test positive. Just because the lab did not find ecstacy does not mean Williams did not ingest esctasy as he admitted. The evidence did not identify how long it takes for ecstacy to metabolize. Williams may have ingested marijuana and ecstacy as he admitted, but not simultaneously. Mr. Williams' argument assumes that his admission to using ecstacy was both factual and truthful.

I find by a preponderance of the evidence that Sedric Williams consumed cocaine prior to submitting the January 9, 2007 UA. Kroll Laboratories, Inc., confirmed that this urine specimen tested positive for the presence of cocaine. Based on the totality of the evidence I am satisfied that proper testing procedures were followed at Kroll Laboratories, Inc., for the Williams' sample tested.

## Conclusions of Law

1.  Revocation of a period of Supervised Release is specifically provided for in 18 U.S.C. § 3583(e)(3), which reads:

> (e) Modification of conditions or revocation. The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6) . . .
>
> (3) Revoke a term of supervised release, . . . if it finds by a preponderance of the evidence that the person violated

4-99-cr-00002-JKS-JDR-WILLIAMS @182 RR Re Pet Revoke SupRel.wpd

9

RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
4-99-cr-00002-JKS-JDR   Signed by Judge John D. Roberts   03/09/2007; Page 9 of 12

>a condition of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and to the provision of applicable policy statement issued by the Sentencing Commission, . . . [.]

2. Revocation is an exercise of broad discretionary power by the trial court akin to that used in imposing a probation sentence initially.  Compare Burns v. United States, 287 U.S. 216, 221 (1932); Gagnon v. Scarpelli, 411 U.S. 778, 784 (1973); United States v. Dane, 570 F.2d 840, 845 (9th Cir. 1977).  Revocation proceedings are not criminal proceedings.  Evidence that would establish guilt beyond a reasonable doubt is not required.  Evidence rising to the level of substantial evidence is not even required, absent arbitrary and capricious action in the revocation.  What is required is that evidence and facts be such as to reasonably satisfy the judge that the supervisee's conduct has not been as good as required by the conditions imposed.  United States v. Leigh, 276 F.3d 1011, 1012 (8th Cir. 2002)(revocation of probation); United States v. Francischine, 512 F.2d 827, 829 (5th Cir.) cert. denied 423 U.S. 931 (1975).  Thus, the Court must be "reasonably satisfied" that a violation has occurred.  United States v. Carrion, 457 F.2d 808, 809 (9th Cir. 1972), cited approvingly in United States v. Lustig, 555 F.2d 751, 753 (9th

4-99-cr-00002-JKS-JDR WILLIAMS @182 RR Re Pet Revoke SupRel.wpd 10

4-99-cr-00002-JKS-JDR RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
Signed by Judge John D. Roberts 03/09/2007; Page 10 of 12

Cir. 1977). The court applies a preponderance of the evidence standard and the burden of proof is on the government.

      3.     A revocation hearing was conducted pursuant to Local Criminal Rule 32.1(a)(2). Federal Rule 32.1 demonstrates a legislative intent that a revocation proceeding be conducted without evidentiary formalities that characterize a criminal trial. Revocation proceedings do not punish a defendant for a new offense; they trigger the execution of the conditions of the original sentence for the offense of the defendant has already been convicted.

      4.     Defendant Williams has a history of drug abuse and a familiarity with cocaine. Although he was not required to submit to drug testing on January 9, 2007, he voluntarily agreed to provide his own urine specimen for testing by the probation office technician on that date. The evidence is sufficient to establish the chain of custody of the UA sample and the reliability of the scientific analysis of the sample by the lab.

      5.     Upon due consideration of the evidence adduced and arguments of the parties I conclude that Sedric Williams possessed or used a controlled substance in violation of the Standard Condition of Supervision No. 7 as alleged in Count 1 of the January 12, 2007 petition (Docket No. 182). The evidence need not, nor does it, identify how Williams might have ingested the cocaine – interveinously, smoking or snorting. The determination of what action the court should take as a

4-99-cr-00002-JKS-JDR WILLIAMS @182 RR Re Pet Revoke SupRel.wpd     11

RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
4-99-cr-00002-JKS-JDR     Signed by Judge John D. Roberts     03/09/2007; Page 11 of 12

result of the defendant's violations is a matter reserved for the assigned district judge.

DATED this 9th day of March, 2007, at Anchorage, Alaska.

/s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Wednesday, March 21, 2007**.  Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON, Tuesday, March 27, 2007**.   The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.  See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).

4-99-cr-00002-JKS-JDR WILLIAMS @182 RR Re Pet Revoke SupRel.wpd                                                    12

RR @182 Re PETITION TO REVOKE SUPERVISED RELEASE
4-99-cr-00002-JKS-JDR          Signed by Judge John D. Roberts          03/09/2007; Page 12 of 12